**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

JAMES WASHINGTON,               :
                                :   Civil Action No. 07-1405 (JAG)
              Petitioner,       :
                                :
        v.                      :   **OPINION**
                                :
MICHELLE RICCI, et al.,         :
                                :
              Respondents.      :


**APPEARANCES:**

Petitioner pro <u>se</u>                Counsel for Respondents
James Washington                Sara A. Friedman
New Jersey State Prison         Essex County Prosecutor
P.O. Box 861                    Essex County Courts Building
Trenton, NJ 08625               Newark, NJ 07102

**GREENAWAY, JR.**, District Judge

     Petitioner James Washington, a prisoner currently confined
at New Jersey State Prison in Trenton, New Jersey, has submitted
a petition seeking the issuance of a writ of habeas corpus,
pursuant to 28 U.S.C. § 2254.  The respondents are Warden
Michelle Ricci and the Attorney General for the State of New
Jersey.

     For the reasons stated herein, the Petition shall be denied.

I.   <u>BACKGROUND</u>

A.   <u>Factual Background</u>

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> Our review of the record satisfies us that a jury could have found the following facts.  On December 12, 1994, at approximately 5:20 p.m. the victim, Fernando DeMarzino was sitting inside his automobile in Newark when James Washington and Alfred Phelps approached his vehicle.  Washington, who the victim knew as "Bos," pulled out a semiautomatic weapon, and shot DeMarzino approximately nine times.  At the same time, Alfred Phelps, who the victim knew as "Rasheed," attempted to enter DeMarzino's vehicle from the passenger side but could not because the door was locked.  At that time, DeMarzino saw that Alfred Phelps was carrying a handgun.  DeMarzino also saw Robert Phelps, who he knew as "Malik," standing in the middle of the street yelling to Washington and Alfred Phelps to "come on."

> DeMarzino survived the shooting and gave a statement to the police concerning the events.  In doing so, he used the defendants' nicknames.  Although DeMarzino knew the men for some time, their true identities only became known on January 4, 1995, when he identified them using a photo array.

> Malcolm Elston, a co-defendant who was acquitted at an earlier trial, also testified that he saw Washington shoot DeMarzino.  He also saw Alfred Phelps attempt to open the passenger side door of DeMarzino's car while holding a gun.  He said that Robert Phelps was standing behind him during the incident, but after the shooting he saw all three defendants walk away together.  Elston stated that when he was again in the

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

defendants' company, Washington and Alfred Phelps seemed proud of what they had done.  Elston stated that when he reminded them that DeMarzino would identify them if he survived, Washington and Alfred Phelps said they would go to the hospital and kill DeMarzino if he survived.  Elston also testified that one month earlier, he saw Washington and Alfred Phelps armed with guns in a pool hall intending to kill DeMarzino. Elston said he stopped them by telling them there were too many people present.  He said that the defendants' dispute with DeMarzino concerned drug trade territory.

Alquamar Searcy, Elston's brother, testified that he had worked for DeMarzino for five to six years.  He testified that two days before the shooting Robert Phelps asked Searcy for nine millimeter bullets which Searcy gave him.  Searcy testified that Robert Phelps told him that he and his people were going to kill DeMarzino.  In addition, Searcy testified that four days after the shooting, Robert Phelps told him about his involvement.

(Opinion of Superior Court, Appellate Division, Feb. 26, 2001, at 4-6.)

B.  <u>Procedural History</u>

Petitioner was convicted in the Superior Court of Essex County, Trial Division, pursuant to a jury trial, of second degree conspiracy to commit murder, in violation of N.J. Stat. Ann. § 2C:5-2 and N.J. Stat. Ann. § 2C:1-3a (count one); first degree attempted murder (count two); second degree aggravated assault (count three); third degree possession of a handgun without a permit (count four); and second degree possession of weapon for an unlawful purpose (count five).  Petitioner was sentenced to an aggregate term of fifty years imprisonment with a 25-year parole disqualifier.

3

On direct appeal, the Superior Court of New Jersey affirmed the conviction and sentence.  The Supreme Court of New Jersey denied certification.  State v. Washington, 169 N.J. 605 (2001).

Petitioner filed a timely petition for post-conviction relief in the trial court.  Counsel was assigned to represent Petitioner and a hearing was held before the trial judge on July 30, 2005.  On January 12, 2006, the trial court denied relief in a short written opinion.  (Resp. Ex. X at Da70.)  On June 9, 2006, the Superior Court, Appellate Division, affirmed the denial of relief.  (Resp. Ex. Z.)  On September 26, 2006, the Supreme Court of New Jersey denied certification.  (Resp. Ex. FF.)

This Petition followed.  Respondents have answered, Petitioner has replied, and the matter is now ready for disposition.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

4

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).

A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to

extend that principle to a new context where it should apply,"
(although the Supreme Court expressly declined to decide the
latter).  Id. at 407-09.

To be an "unreasonable application" of clearly established
federal law, the state court's application must be objectively
unreasonable.  Id. at 409.  In determining whether the state
court's application of Supreme Court precedent was objectively
unreasonable, a habeas court may consider the decisions of
inferior federal courts.  Matteo v. Superintendent, 171 F.3d 877,
890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits
of a claim is entitled to § 2254(d) deference.  Chadwick v.
Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v.
Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims
presented to, but unadjudicated by, the state courts, however, a
federal court may exercise pre-AEDPA independent judgment.  See
Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000),
cert. denied, 532 U.S. 924 (2001).

The deference required by § 2254(d) applies without regard
to whether the state court cites to Supreme Court or other
federal caselaw, "as long as the reasoning of the state court
does not contradict relevant Supreme Court precedent."  Priester
v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.

Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies. See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998).

### III. ANALYSIS

A. Claims Regarding Evidence of Witness Bias

1. DeMarzino's Status as Informant

Petitioner contends that the victim, Fernando DeMarzino, was an informant for the State. Petitioner alleges that he filed a pre-trial request for information regarding the informant status of DeMarzino and that the State responded that DeMarzino was not

7

a State informant.[2]  When the matter came up during cross-examination of Detective Massucci, at trial, the government objected and invoked the "informer privilege."  Petitioner contends here that the trial court erred in limiting his cross-examination of Detective Massucci regarding the informant status of DeMarzino.  Specifically, Petitioner argues that establishing DeMarzino's motive to be biased on this topic is permissible in this instance.

In support of this claim, on direct appeal to the Appellate Division, Petitioner cited Rovarco v. United States, 353 U.S. 53,

_____

[2] Although Petitioner refers to a pre-trial request for information about DeMarzino's alleged informant status, and the government's alleged failure to provide such information, this Court does not construe the Petition as alleging a violation of Brady v. Maryland, 373 U.S. 83 (1963), with respect to DeMarzino.

The prosecution in a criminal matter has a constitutional obligation to disclose exculpatory evidence to the defendant. See Brady v. Maryland, 373 U.S. 83 (1967), Giglio v. United States, 405 U.S. 150, 154 (1972) ("A finding of materiality of the evidence is required under Brady."). Exculpatory evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickler v. Greene, 527 U.S. 263, 280 (1999) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). Nondisclosure merits relief only if the prosecution's failure "'undermines confidence in the outcome of the trial.'" Kyles v. Whitly, 514 U.S. 419, 434 (1995) (quoting Bagley, 473 U.S. at 678).

To the extent the Petition could be construed as asserting a Brady claim, Petitioner fails to establish that any information regarding DeMarzino's "informant" status would have been "material." In light of DeMarzino's strong in-court identification of Petitioner as the shooter, the failure to disclose any information regarding DeMarzino's alleged informant status does not undermine confidence in the outcome of the trial.

62 (1957) ("Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the [informer's] privilege must give way.").

The Appellate Division rejected the claim that Petitioner should have been allowed to cross-examine Detective Massucci about DeMarzino's alleged "informant" status in order to establish bias.

Alfred Phelps and James Washington argue that, critical to the defense at trial, was their ability to argue that all the State witnesses had reason to lie because they had been threatened by or received substantial benefits from Dennis Massucci, the detective assigned by the prosecutor's office.  In support of this argument, the defense sought to explore whether DeMarzino received any consideration on unrelated criminal charges from the Prosecutor's office in return for his testimony.  Defendants claim that the trial judge limited their right to inquire into this area on cross-examination and then prejudiced defendants by instructing the jury that the court had made an independent determination that the criminal matters pending against DeMarzino had been dismissed for an appropriate reason unrelated to this case.

On cross-examination, DeMarzino denied that the criminal charges lodged against him in 1995 were dismissed in exchange for his cooperation with the State.  The prosecutor objected to this line of questioning contending the information was not relevant and was privileged.  Defendants claim the information was relevant and that DeMarzino's possible informant status was discoverable.  Defendants demanded that the prosecutor disclose whether DeMarzino had any agreements or received anything in exchange for his cooperation.

The trial judge conducted an in camera hearing in which Detective Massucci testified concerning his knowledge of the subject matter.  After hearing

9

Detective Massucci's testimony, the judge ruled that
defense counsel could not inquire whether DeMarzino was
an informant.  Defense counsel were also prohibited
from inquiring into the reasons why the 1995 charges
were dismissed.  The judge added that he was satisfied
that the charges were dismissed for legitimate
purposes, not for the promise of his cooperation in
this case.  We have examined the sealed record of the
proceedings and concur in the trial judge's findings.
[Fn2]

> [Fn2] We are satisfied that the trial judge's
> reasons for sealing the record remain as
> valid now as they were then.  Accordingly,
> the record shall remain sealed, subject only
> to review by the Supreme Court.

The right of cross-examination is not absolute and
may bow to competing interests, such as fairness,
reliability and public policy considerations.  State v.
Budis, 125 N.J. 519, 531-32 (1991).  The focus of
defendants' proposed cross-examination of Massucci was
to show that DeMarzino cooperated with law enforcement
and therefore was a biased witness.  Although evidence
of bias is usually relevant it is not in the present
case.

Alfred Phelps, cites to State v. Vaccaro, in
support of his contentions that the trial judge erred.
142 N.J. Super. 167 (App. Div.), certif. denied, 71
N.J. 518 (1976).  In Vaccaro, we held that the defense
should have been able to cross-examine witnesses as to
the possible relationship between the disposition of
their cases and their cooperation with the State.  Id.
at 176-77.  In that case, however, the witnesses were
active participants in the defendant's criminal
activities, whereas, in the present case, DeMarzino is
the victim, not a participant in the crime.  Therefore,
Vaccaro does not lend support to this case.

James Washington cites State v. Florez, 261 N.J.
Super. 12 (App. Div. 1992), aff'd, 134 N.J. 570 (1994).
That case involves the identity of an informant and is
of no support in this case.  In Florez the prosecutor
hired the informant, a cocaine broker, to set up drug
deals and sell cocaine at less than market price.
Ibid.  When the defense wanted to disclose the
informant's identify, the State argued that it was

protected under the informer's privilege rule,
currently N.J.R.E. 516.  This rule provides that the
identity of an informer need not be disclosed and
evidence respecting the identity of an informer "is
inadmissible, unless the judge finds that (a) the
identity of the person furnishing the information has
already been otherwise disclosed or (b) disclosure of
his identity is essential to assure a fair
determination of the issues."  After balancing the
risks involved, the court ordered the State to disclose
the name and address of the informant.  Importantly,
the informant there was a participant in the crime.

Moreover, Alfred Phelps cites to <u>State v. Jones</u>,
for the proposition that a defendant has the right to
introduce the details of a witness's, prior cooperation
with the State.  239 N.J. Super. 460, 462 (App. Div.
1990), <u>certif. denied</u>, 126 N.J. 388 (1991).  In <u>Jones</u> a
witness assisted the defendant in a theft.  <u>Ibid.</u>
Thereafter, the witness approached the prosecutor's
office offering information about the theft.  <u>Ibid.</u>
The witness wore a hidden microphone and tape recorded
the defendant's incriminating statements.  The witness
also identified the defendant at trial.  <u>Id.</u> at 463.

Unlike all the cases cited by defendants,
DeMarzino was not an active participant in the criminal
event for which the defendants are charged.  Rather, he
was the victim.  Moreover, the trial judge only limited
defendants as to whether DeMarzino was an informant.
He did not limit any other cross examination.  Defense
counsel was free to ask whether DeMarzino was paid for
his testimony and to discuss his prior criminal record.
We find that the limitation on cross-examination was
appropriate under the circumstances.

(Opinion of Appellate Division, Feb. 26, 2001, at 17-20.)

The conclusion of the Appellate Division is neither contrary

to, nor an unreasonable application of, the governing federal

law.  The Sixth Amendment's Confrontation Clause provides that,

"In all criminal prosecutions, the accused shall enjoy the right

... to be confronted with the witnesses against him."  The right

11

of confrontation is secured for defendants in state as well as federal criminal proceedings.  <u>Pointer v. Texas</u>, 380 U.S. 400 (1965).  "'The main and essential purpose of confrontation is <u>to secure for the opponent the opportunity of cross-examination</u>.'" <u>Davis v. Alaska</u>, 415 U.S. 308, 315-16 (1974) (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)) (emphasis in original).  "[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." <u>Davis</u>, 415 U.S. at 316-17 (citation omitted).

> It does not follow, of course that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness.  On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.  And as we observed earlier this Term, "the Confrontation Clause guarantees an <u>opportunity</u> for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." <u>Delaware v. Fensterer</u>, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (per curiam) (emphasis in original).

> ...

> [T]he constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to <u>Chapman[ v. California</u>, 386 U.S. 18 (1967),] harmless-error analysis.  The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless

> beyond a reasonable doubt.  Whether such an error is
> harmless in a particular case depends upon a host of
> factors, all readily accessible to reviewing courts.
> These factors include the importance of the witness'
> testimony in the prosecution's case, whether the
> testimony was cumulative, the presence or absence of
> evidence corroborating or contradicting the testimony
> of the witness on material points, the extent of cross-
> examination otherwise permitted, and, of course, the
> overall strength of the prosecution's case.

Delaware v. Van Arsdall, 475 U.S. 673, 679, 684 (1986) (citations omitted).

Here, the jury was made aware that certain criminal charges against DeMarzino were dismissed.  They were also aware that DeMarzino had other reasons to be biased against Petitioner, not the least of which was the fact that DeMarzino was the victim of the crime charged.  Other eyewitnesses testified that Petitioner was the shooter.  In light of the strong identification testimony by DeMarzino, who testified that he knew Petitioner (and his street name) before the shooting, the Appellate Division's conclusion, that the limitation on cross-examination was reasonable, is not contrary to, nor an unreasonable application of, the governing federal law.  Petitioner is not entitled to relief on this claim.

2.  Malcolm Elston

Petitioner also alleges that the government withheld information that Malcolm Elston, a former co-defendant who had been acquitted, was an informant for the Essex County Prosecutor's Office in drug cases and for the Union County

13

prosecutor in an unrelated matter.  This information was revealed during trial.

In his state petition for post-conviction relief, Petitioner argued that the withholding of information regarding Elston's potential bias violated Petitioner's rights under <u>Kyles v. Whitley</u>, 514 U.S. 419, 437 (1995), <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972), and <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).

The post-conviction relief ("PCR") court determined that this claim was barred by New Jersey Court Rules 3:22-3 and 3:22-4.  Specifically, the rules bar consideration of claims on post-conviction relief that should have been, but were not, raised on direct appeal.  On direct appeal, Petitioner did not challenge the trial court's finding that the claim was procedurally barred, but raised it only in the context of his claim that appellate counsel failed to provide effective assistance by failing to raise the claim on direct appeal.

Similarly, the Appellate Division rejected this claim in the context of Petitioner's claim that he was denied effective assistance of appellate counsel.  Specifically, the Appellate Division found that appellate counsel would not have succeeded on this claim, so there was no ineffective assistance of counsel.

> In particular, defendant first asserts that the State did not timely advise him about inculpatory statements made against him by Elston, an eyewitness to the shooting who was initially indicted as one of his

co-defendants, and that the State also failed to timely
advise him about a sentencing recommendation offered to
Elston in light of his expected testimony.  In
addition, defendant asserts that the State also failed
to timely produce discovery relating to statements made
by Searcy, the jailhouse informant.

We reject defendant's assertion that appellate
counsel was ineffective for failing to include
arguments about the timeliness of the State's
disclosure of this information as part of the direct
appeal.  Our review of the record makes plain that the
State did not, in fact, withhold information from
defendant as he suggests in his PCR petition.  The
State asserts, and there is no evidence to suggest
anything to the contrary, that the State was not aware
of the conversation in the pool hall between Elston and
defendant prior to the time when Elston testified at
the preliminary hearing.  The State produced the
evidence concerning Elston's statement in a timely
fashion thereafter.  Similarly, the record is
abundantly clear that the State was unaware that Searcy
had been in jail with the defendant until the morning
of trial.  Because there is no merit to defendant's
assertion that the State withheld evidence, there can
be no ineffective assistance claim based on appellate
counsel's failure to raise these arguments as part of
the direct appeal.

(Opinion of Appellate Division, June 9, 2006, at 5-6.)

Respondents contend that the state procedural default is a

bar to consideration of this claim in this federal habeas

proceeding and that, in any event, the claim is meritless.[3]

---

[3]    A procedural default occurs when a prisoner's
federal claim is barred from consideration in
the state courts by an "independent and
adequate" state procedural rule.  <u>See</u>, <u>e.g.</u>,
<u>Doctor[ v. Walters</u>, 96 F.3d 675, 683 (3d Cir.
1996)].  Federal courts may not consider the
merits of a procedurally defaulted claim
unless the applicant establishes "cause" to
excuse the default and actual "prejudice" as
a result of the alleged violation of the

On habeas review of state prisoner claims, a federal court "will presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" Coleman, 501 U.S. at 734-35 (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)).[4]  Only a "firmly established and regularly followed state practice" is adequate to prevent subsequent habeas review in federal court. James v. Kentucky, 466 U.S. 341, 348-351 (1984). See also Lee v. Kemna, 534 U.S. 362, 376 (2002) ("Ordinarily, violation of 'firmly established and regularly followed' state rules ... will be adequate to foreclose review of a federal claim." (citations omitted)).  Generally speaking, "[a] state court's refusal to address a prisoner's federal claims because he has not met a state procedural requirement is both independent and adequate."

_____

federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).

[4] A state court's reliance on a procedural bar as an alternate holding is sufficient to trigger the "cause" and "prejudice" test.  See United States ex rel. Caruso v. Zelinsky, 689 F.2d 435, 440 (3d Cir. 1982).

16

<u>Cabrera v. Barbo</u>, 175 F.3d 307, 312 (3d Cir. 1999) (citations omitted).

The "cause" standard requires a petitioner to show that some objective factor external to the defense impeded his efforts to comply with the state procedural rule.  <u>See</u> <u>Coleman</u>, 501 U.S. at 752 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)).  In the absence of a Sixth Amendment violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation.  <u>Coleman</u>, 501 U.S. at 754.  Neither a pro se prisoner's ignorance of the procedural rule nor inadvertence satisfies the cause standard.  <u>Murray</u> at 485-87.  Failure of the state court to "bend the rules" for a pro se litigant is not cause.  <u>Caswell v. Ryan</u>, 953 F.2d 853, 862 (3d Cir. 1992).

To establish "prejudice," a petitioner must prove "'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension.'"  <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)).

In the context of an ineffective assistance claim, the Court of Appeals for the Third Circuit has held that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have

17

been different." <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 670 (3d Cir. 1996).

In the alternative, in order to establish that failure to review an otherwise procedurally defaulted claim will result in a "miscarriage of justice," a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Carrier</u>, 477 U.S. at 496. "Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him." <u>Werts v. Vaughn</u>, 228 F.3d 178, 193 (3d Cir. 2000) (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 326 (1995)).

Petitioner does not contend that Rules 3:22-3 and 3:22-4 are anything but a "firmly established and regularly followed state practice," and case law suggests that the rules are firmly established and regularly followed, the notable exception involving claims of ineffective assistance of counsel. <u>See</u>, <u>e.g.</u>, <u>Cabrero v. Barbo</u>, 175 F.3d 307, 312-14 (3d Cir. 1999) (dicta). Thus, the PCR court denied relief on an independent and adequate state ground, precluding review here of Petitioner's claim unless he can meet the "cause" and "prejudice" standard or demonstrate that failure to consider the claim will result in a miscarriage of justice. Petitioner has alleged "cause" based upon his counsel's failures to prepare adequately regarding

18

Elston's testimony and to raise on appeal the government's
failure to provide material information.

As noted above, and in the discussion of Petitioner's
ineffective assistance of counsel claim, <u>infra</u>, the Appellate
Division rejected any claim of ineffective assistance of counsel
based, primarily, on the immediate, forceful, and unwavering
identification of Petitioner by his victim, who knew him prior to
the event.

This Court agrees that, in light of the strength of the
identification, Petitioner cannot establish "cause" and
"prejudice" for his procedural default.  Also, Petitioner cannot
establish a miscarriage of justice based upon any withholding of
evidence of Elston's bias.  Petitioner is not entitled to relief
on this claim.

B.   <u>Ineffective Assistance of Counsel</u>

The Counsel Clause of the Sixth Amendment provides that a
criminal defendant "shall enjoy the right ... to have the
Assistance of Counsel for his defence."  U.S. Const. amend. VI.
The right to counsel is "the right to <u>effective</u> assistance of
counsel."  <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970)
(emphasis added).

To prevail on a claim of ineffective assistance of counsel,
a habeas petitioner must show both that his counsel's performance
fell below an objective standard of reasonable professional

19

assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different.  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome."  Strickland at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.

The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed."  Id. at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Id. at 690-91.  If counsel has been deficient in any way, however, the

habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland. See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. Evitts v. Lucey, 469 U.S. 387 (1985).  The Strickland standard for effective assistance of counsel applies to appellate counsel. See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

   1.  Trial Counsel

Petitioner contends that his trial counsel failed to provide effective assistance because (1) he failed to request pre-trial discovery regarding Malcolm Elston's status as a government informant; (2) he failed to move to suppress testimony regarding what was found in the vehicle, despite the fact that it had been released before the defense had an opportunity to inspect it;

(3) he failed to use an alibi defense strategy which was supported by two witnesses; and (4) he failed to call defense witness April Mitchell in order to impeach state eye-witness testimony.

The trial court rejected these claims when presented in the petition for post-conviction relief.

> [T]he Supreme Court has stated that issues concerning allegations of ineffective assistance of counsel are best heard by the trial court in a petition such as the one currently before the Court.  See, e.g., State v. Preciose, 129 N.J. 451 (1992).  In State v. Fritz, 105 N.J. 42, 58 (1987), New Jersey Courts adopted the test set forth in Strickland v . Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) as the standard that would be used to evaluate claims alleging ineffective assistance of counsel.  Strickland's two-pronged test requires that a reviewing court must first determine whether counsel's performance fell below an objective standard of reasonableness, Strickland, supra, 466, and second, whether there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 694.  As indicated in State v. Chew, 179 N.J. 186, 203-204 (2004), "The first prong is satisfied by a showing that counsel's acts or omissions fell 'outside the wide range of professionally competent assistance' considered in light of all the circumstances of the case. ...  The second prong is satisfied by a defendant showing 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'  The error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached.  (Citations omitted).

> Though the Appellate Court did in fact consider an allegation of ineffective assistance of counsel in the original appeal, the claim is reexamined in this petition in that new and different allegations are raised.

In the present matter, Petitioner claims that defense counsel was ineffective in that he: failed to call alibi witnesses, failed to confirm that he was not incarcerated with one of the state's witnesses (Searcy), failed to move for an Order to prevent the destruction of evidence (the automobile the victim was riding in at the time of the shooting), failed to investigate the pending charges against the victim and that his overall conduct undermined the proper functioning of the adversarial process.  This court is satisfied that all of the claims are without merit. Counsel has provided a copy of the Grand Jury testimony of the proposed alibi witnesses.  Neither of the witnesses say that they were with or saw the defendant at the time of the shooting, but rather suggest that the defendant had to be home at the critical time because he was baby-sitting.  Even if a Court were to determine that failure to call the alibi witnesses was an inappropriate exercise of trial tactics (which this Court does not find), this claim, and the other allegations of defense counsel's "failures" fall far short of satisfying the second prong of the Strickland test.

As stated in the Appellate opinion when affirming the denial of a new trial, "... DeMarzino, the victim, was the key witness".  (Slip opinion, page 8).  During the course of the trial, DeMarzino testified that the petitioner, known to him at the time as "Boz", came up to his car and shot him through the window.  I am satisfied that given the strength of the identification of the defendant as a shooter by the victim, along with other evidence introduced during the trial in this matter, the results would not have changed even if counsel had performed the now alleged failures which are set forth in the Petition.

(PCR Opinion, January 12, 2006, at 2-3.)[5]

_____

[5] Although Respondents do not raise non-exhaustion as an affirmative defense, this Court notes that Petitioner did not appeal the PCR court's findings as to ineffective assistance of trial counsel.  (Resp. Ex. X, Brief of Appellant.)  Nevertheless, this Court may deny the claim on the merits, notwithstanding the failure of Petitioner to exhaust his state remedies.  See 28 U.S.C. § 2254(b)(2).

The PCR court correctly identified and applied the governing federal standard set forth in Strickland v. Washington. The PCR court found that grand jury testimony revealed that the alleged alibi witnesses were not truly able to provide an alibi; thus, Petitioner failed to establish deficient performance regarding the alibi witnesses. In addition, the PCR court found that the testimony of the victim, who knew Petitioner and who identified Petitioner as the person who shot him, was sufficiently strong that the result would not have changed had trial counsel performed differently; thus, Petitioner failed to establish the prejudice prong. The PCR court's conclusion that Petitioner had failed to establish either the performance or the prejudice prongs of the Strickland standard is neither contrary to, nor an unreasonable application of, the Strickland standard. Petitioner is not entitled to relief on this claim.

   2.  Appellate Counsel

Petitioner contends that his appellate counsel was ineffective for not raising the following issues on direct appeal, causing them to be procedurally barred from post-conviction relief: (1) the wilful failure of the State to provide Petitioner with timely discovery regarding inculpatory evidence violated Petitioner's right to a fair trial; (2) the trial court should have excluded testimony that (a) Mr. DeMarzino's brother had been murdered, (b) a judgment of acquittal was granted Mr.

24

Elston on the murder charges, (c) "Boz was crazy,"[6] (d) plea agreements in this case were "tools needed to get serious people off the street," (e) certain criminal charges against Mr. DeMarzino were dismissed for legitimate reasons not disclosed to the jury; (3) Petitioner was deprived of his right to a fair trial by the State's release of the automobile without notice to the defense and without affording them an opportunity to conduct forensic testing.[7]

The Appellate Division rejected the argument that appellate counsel provided ineffective assistance by failing to raise these issues in the direct appeal.

> Defendant's appeal from denial of his PCR petition is directed to four of the nine points he raised initially.  He attacks appellate counsel for failing to raise three of the points included in the PCR petition. These points may be summarized as a contention that the

---

[6] At trial, Alquamar Searcy, Elston's brother, was asked if the defendants had asked him not to testify.  He responded that sometime in 1996, Robert Phelps (Malik) told him that they would beat the charges and that "Boz was crazy," talking about finishing the job against DeMarzino.  After a <u>voir</u> <u>dire</u> examination outside the presence of the jury, the trial court denied a motion for mistrial.  Thereafter, Searcy stated that this conversation occurred with both Malik and Rasheed, who showed him a law book and tried to convince him that he had only a six-month exposure for contempt if he refused to testify against them, as compared to a worse scenario if he were known as a "snitch."

[7] Petitioner does not itemize these claims in the Petition, but refers to the PCR decision for issues that were barred "on the grounds they should have been raised on direct appeal." (Pet. at ¶ 12(D).)  These are the issues that the trial court found were barred under New Jersey Court Rule 3:22-3 because they should have been raised on direct appeal.

State had failed to provide timely discovery regarding
inculpatory evidence, an argument that evidence should
have been excluded pursuant to N.J.R.E. 403, and an
argument concerning the loss or destruction of
evidence.

In order for defendant to succeed on his
assertions that he was denied effective assistance of
appellate counsel, he must demonstrate that the outcome
would have been different had the issues been raised on
direct appeal.  See Strickland v. Washington, 466 U.S.
668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693
(1984); State v. Fritz, 105 N.J. 42, 58 (1987).  We
have independently reviewed each of the points
defendant asserted in his PCR petition and have
concluded that none of them would have succeeded on
direct appeal.  We therefore conclude that none
suffices for purposes of the Strickland/Fritz test.

In particular, defendant first asserts that the
State did not timely advise him about inculpatory
statements made against him by Elston, an eyewitness to
the shooting who was initially indicted as one of his
co-defendants, and that the State also failed to timely
advise him about a sentencing recommendation offered to
Elston in light of his expected testimony.  In
addition, defendant asserts that the State also failed
to timely produce discovery relating to statements made
by Searcy, the jailhouse informant.

We reject defendant's assertion that appellate
counsel was ineffective for failing to include
arguments about the timeliness of the State's
disclosure of this information as part of the direct
appeal.  Our review of the record makes plain that the
State did not, in fact, withhold information from
defendant as he suggests in his PCR petition.  The
State asserts, and there is no evidence to suggest
anything to the contrary, that the State was not aware
of the conversation in the pool hall between Elston and
defendant prior to the time when Elston testified at
the preliminary hearing.  The State produced the
evidence concerning Elston's statement in a timely
fashion thereafter.  Similarly, the record is
abundantly clear that the State was unaware that Searcy
had been in jail with the defendant until the morning
of trial.  Because there is no merit to defendant's
assertion that the State withheld evidence, there can

be no ineffective assistance claim based on appellate counsel's failure to raise these arguments as part of the direct appeal.

Nor do we conclude that appellate counsel was ineffective for failing to object to the admissibility of evidence pursuant to N.J.R.E. 403.  On appeal, defendant has presented a lengthy list of evidence that he believes should have been excluded under the probative/prejudice balancing test of N.J.R.E. 403.  He asserts that he was deprived of the effective assistance of appellate counsel because the admissibility of this evidence was not challenged as part of the direct appeal.  In particular, defendant contends that the following statements were inadmissible.  First, the victim, Fernando DeMarzino, referred to the fact that he knew Massucci, the State's investigator, because of Massucci's work investigating DeMarzino's brother's murder.  Second, Elston testified that he had been acquitted at an earlier trial of the attempted murder of DeMarzino for which defendant had also been indicted.  Third, Searcy testified that one of the other co-defendants, Robert [Phelps], had referred to defendant as "crazy."  Fourth, Massucci testified that a plea agreement was reached with Elston in order to "get serious people [like defendant] off the street."  Fifth, the trial judge advised the jury that he had dismissed certain charges against DeMarzino for reasons unconnected to the case.

As part of his attack against the effective assistance of appellate counsel, defendant asserts that the cumulative effect of these statements was overly prejudicial when tested against the N.J.R.E. 403 standard.  We reject this argument.  First, the evidence concerning the murder of DeMarzino's brother was elicited by the defense rather than by the State.  Second, the testimony concerning Elston's acquittal arose during cross-examination.  Third, the other evidentiary arguments were, in fact, raised on appeal and considered as a part of our prior opinion affirming defendant's conviction.  There is, in short, no ground on which to conclude that defendant was deprived of the effective assistance of appellate counsel for failing to raise any of the N.J.R.E. 403 arguments.  None of the challenges had sufficient merit to have been successful during the direct appeal.

27

Defendant's final argument that he was denied the effective assistance of appellate counsel is that counsel should have raised an argument during the direct appeal concerning the failure of his trial counsel to move to preserve the vehicle in which DeMarzino was shot.  In support of this assertion, defendant argues that had the vehicle been preserved "evidence of value ... could have been used to impeach the State's witnesses."

There are several shortcomings in this particular argument.  First, DeMarzino, the victim in the attempted murder, who was shot numerous times at close range by defendant, survived and testified at trial, identifying defendant as the shooter.  In the face of that stark evidence, defendant's suggestion that some unidentified piece of forensic evidence could have been recovered from the vehicle that might have created reasonable doubt so as to avoid his conviction is completely without merit.

Moreover, defendant bears the burden of establishing his right to PCR by a preponderance of the credible evidence.  State v. Preciose, 129 N.J. 451, 459 (1992); State v. Cann, 342 N.J. super. 93, 102 (App. Div.), certif. denied, 170 N.J. 208 (2001).  The standard requires that "defendant 'must do more than make bald assertions that he was denied the effective assistance of counsel.'" State v. Petrozelli, 351 N.J. Super. 14, 23 (App. Div. 2002) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.), certif. denied, 162 N.J. 199 (1999)).  Here, defendant was required to support his PCR petition by demonstrating with some particularity what evidence might have been secured had the vehicle been preserved for forensic testing.  As defendant has not offered even a suggestion as to what might have been found or what theory favoring defendant's acquittal might have been supported by testing of that vehicle, we discern no ground on which to conclude that appellate counsel was ineffective for failing or declining to raise this argument on direct appeal.

(Resp. Ex. Z, Opinion of Appellate Division, June 9, 2006, at 4-9.)

The State court correctly identified and applied the
Strickland standard.  With respect to most of Petitioner's
claims, the Appellate Division found no deficiency in counsel's
performance.  Most significantly, the Appellate Division relied
upon the strength of the victim's testimony and his
identification of Petitioner to find that there was no reasonable
probability that any difference in counsel's performance would
have led to a different outcome.  Petitioner is not entitled to
relief on this claim.

IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or
judge issues a certificate of appealability, an appeal may not be
taken from a final order in a proceeding under 28 U.S.C. § 2254.
A certificate of appealability may issue "only if the applicant
has made a substantial showing of the denial of a constitutional
right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this
standard by demonstrating that jurists of reason could disagree
with the district court's resolution of his constitutional claims
or that jurists could conclude the issues presented are adequate
to deserve encouragement to proceed further."  Miller-El v.
Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of
the denial of a constitutional right.  No certificate of
appealability shall issue.

29

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.   An appropriate order follows.


<u> S/Joseph A. Greenaway, Jr. </u>
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated:  July 28, 2008

30